FREDENBURG v. EMPIRE UNITED RYS., Inc.   (No. 177/94.)

(Supreme Court, Appellate Division, Third Department.   July 1, 1915.)

1. MASTER AND SERVANT ⬤⟳250¾, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION LAW—AMOUNT OF COMPENSATION.

Workmen's Compensation Law (Laws 1914, c. 41) § 14, provides that, except as otherwise provided therein, the average weekly wages at the time of the injury shall be the basis of compensation; that, if the employé shall have worked in the same employment during substantially the whole of the preceding year, his average annual earnings shall consist of 300 times his average daily wages for the days when so employed; that, if not, such earnings shall consist of 300 times the average daily wage of an employé of the same class working substantially the whole of such year; and that, if neither of these methods can reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the employé and other employés of the same class, shall reasonably represent the annual earning capacity of such employé. A motorman for an electric railway company had for several years worked on passenger cars, receiving 30 cents an hour. The railway company every six months permitted its employés in the order of their seniority to choose their runs, and such employé, about one month before the injury, had thus obtained the running of an express car at $3.50 per day. There was a reasonable possibility of his continuing on that run, though at the end of six months he might lose it. The company's secretary testified that it was the company's custom to pay an employé in the service of the company as long as the injured employé 35 cents an hour upon a freight run. *Held*, that this tended to fix the average daily wage of a motorman in such employment prior to the time the claimant took such run, as well as the average earnings of other employés, and the Commission's award on the basis of $3.50 a day was warranted by the evidence.

2. MASTER AND SERVANT ⬤⟳250¾, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION LAW—AMOUNT OF COMPENSATION.

The Workmen's Compensation Act provides for a compensation amounting to two-thirds of the average weekly wages for all disabilities, total or partial, though for longer or shorter periods. An employé sustained injuries resulting in the amputation of one foot and other injuries not shown to be permanent, which in themselves would have disabled him from the time of his injury to the date of an award by the Compensation Commission. The Commission awarded two-thirds of his weekly wages for 205 weeks for the loss of the foot. *Held*, that the Commission could not, in addition to such award, make a further award, running concurrently with the first award, for other injuries than the loss of the foot, though at the expiration of the 205 weeks, if disability still existed by reason of other injuries, the employé might be entitled to a further award; it being the plain purpose of the statute that awards shall take effect consecutively, rather than concurrently.

Appeal from Workmen's Compensation Commission.

Proceedings under the Workmen's Compensation Act by Guy Fredenburg to obtain compensation for personal injuries from the Empire United Railways, Incorporated, employer and self-insurer. From awards made by the Workmen's Compensation Commission, the employer appeals. Affirmed in part, and reversed in part.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Nottingham, Nottingham & Edgcomb, of Syracuse (Ernest I. Edgcomb, of Syracuse, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, Deputy Atty. Gen., of counsel), for respondent.

Jeremiah F. Connor, of New York City, for State Workmen's Compensation Commission.

LYON, J. This is an appeal from awards made by the Workmen's Compensation Commission. The facts are undisputed. The claimant, at the time of receiving the injuries, November 7, 1914, was a motorman on a trolley express car of the defendant and had been in its employ for seven years. He was injured while standing on top of the car, removing the trolley pole from its socket. One end of the trolley pole came in contact with the trolley wire while his right foot was against the socket, severely burning both hands and both feet, and less seriously injuring other portions of his body. These injuries necessitated the amputation of his right foot, and at least temporarily totally incapacitated him from using his left foot or either hand. At the time of sustaining the injuries he had worked for 1 month and 2 days, Sundays excluded, as the motorman of the express car, receiving $3.50 for each day he worked. Prior to taking service as a motorman upon an express car, he had worked for the defendant for some years as a motorman upon passenger cars, receiving 30 cents per hour for the time he worked. During the 12 months preceding taking service upon the express car, he had worked 343 days and had received $961.85. Each 6 months the employés of the defendant were allowed to choose their runs in the order of seniority of service. When the claimant, who was the seventh on the list, came to make his choice, the express run seemed to him to be the most desirable of those left, and he chose that. Whether upon a new choosing at the end of 6 months the express run might be chosen before it came his turn to make a choice, and he be compelled to return to a passenger run at 30 cents per hour, but with the opportunity of making overtime, was, of course, uncertain.

Upon a hearing had before a commissioner and a deputy commissioner January 12, 1915, an award was made claimant for the loss of his foot; and upon a hearing had before deputy commissioners January 26, 1915, an award was made for injuries other than the loss of a foot. The Commission, by decision of date January 28, 1914, approved and confirmed said two awards, and formally awarded the claimant compensation for the loss of his right foot for 205 weeks from November 21, 1914, at the rate of $13.46 per week, which was two-thirds of his weekly wages, fixing his average weekly wages at $20.19 per week, or upon the basis of $3.50 per day, and also awarded the claimant compensation of $13.46 per week, for 14 weeks, from November 21, 1914, ending February 27, 1915, for disability caused by injuries other than the injuries to and the amputation of his foot, and continued the case for further hearing. In its conclusions of fact, upon which the awards were based, the Commission found that the injuries to his right foot and its amputation would have disabled

him from working, had he received no other injuries, from November 7, 1914, until the date of the award, and that the remaining injuries, had he received no injuries to his right foot, would have disabled him from working from November 7, 1914, until the date of the award. The correctness of these findings cannot be questioned; nor, doubtless, could one that the disability caused by injuries other than the injuries to and the amputation of the right foot would continue until February 27, 1915.

We shall treat such as the conceded facts. The defendant makes no objection to the award of 205 weeks for the loss of the foot. It bases its appeal upon the claim that claimant's average weekly wages should have been computed upon his earnings upon the passenger run, rather than upon the express run, and that no award whatever should have been made in addition to the award of 205 weeks for the loss of his right foot.

[1] As to the computation of claimant's wages, section 14 of the Compensation Law provided that, except as otherwise provided in that chapter, the average weekly wages of the injured employé at the time of the injury should be taken as the basis upon which to compute compensation or death benefits, and should be determined as follows: If the injured employé shall have worked in the employment in which he was working at the time of the accident during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of 300 times his average daily wage. If he shall not have so worked, the basis for computation shall be the average daily wage which an employé of the same class, working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned when so employed. If either of the foregoing methods of arriving at the annual average earnings cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employé, and of other employés of the same or most similar class, shall reasonably represent the annual earning capacity of the injured employé in the employment in which he was working at the time of the accident.

The employment of the claimant as motorman on the express car was assured for at least 6 months from the time he entered upon it, and there was a reasonable possibility of his continuing on that run. Although he had not worked as motorman on the express car for the year immediately preceding the accident, it appears from the affidavit of the secretary of the defendant that it was the custom of the defendant to pay an employé who had been in the service of the company as long as the claimant 35 cents per hour upon a freight run. This tended to fix the average daily wage of a motorman in such employment prior to the time the claimant took that run, as well as to fix the average earnings of other employés in the same position. We think the finding of the Commission as to the average weekly wages of the claimant was fully warranted by the evidence.

[2] As to the award of $13.46 for injuries other than the loss of the right foot, consisting mainly of injuries to the hands, the claimant

154 N.Y.S.—23

was given by the two awards, which ran concurrently, $26.92 per week, or $6.73 more than his average weekly earnings; the second award being, as stated in the brief of the commission, for temporary total disability because of injuries sustained by the claimant other than those resulting in the loss of his foot.

Making the second award was, we think, plainly contrary to the intent of the Compensation Law. The purpose of that statute, as expressed in the report of the legislative commission upon which it was mainly founded, was not to furnish full compensation, "but a sum payable weekly, in general, one-half wages, which we believe will keep him and those dependent on him out of absolute destitution." While the Legislature has provided for more liberal treatment of the injured employé than that suggested in this report of the Wainright Commission, there is nothing to be found in the act justifying the allowance of concurring compensation for temporary total disability when the employé is already receiving a weekly compensation of two-thirds of his average weekly wages, or full compensation for total disability. The act provides but the single rate of compensation, to wit, 66⅔ per centum of the employé's average weekly wages; and this percentage for a longer or shorter period is applicable to all disabilities, whether total or partial, and is the maximum compensation provided for by the statute. The act was not intended as a source of profit to the employé, or as a means of punishment of the employer, who in many cases is wholly free from any fault in connection with the accident. If concurring awards may be allowed, it is easy to see how that practice may be carried to such an extent as to become very burdensome and unjust to the employer and very unfortunate to an improvident employé, and to a considerable extent render nugatory the beneficent purpose of the statute.

In this case, had the claimant, in addition to losing his foot, lost a thumb and a second finger, for which he would have been entitled to be awarded compensation for 60 weeks and 30 weeks, respectively, the awards therefor, if running concurrently, would have entitled him to twice his weekly wages for 30 weeks, to 1⅓ times his weekly wages for 30 weeks, and to two-thirds of his weekly wages for 145 weeks, when the payment of compensation would terminate. With the awards taking effect consecutively, such employé so injured would receive 66⅔ per cent. of his weekly wages for a period of 295 weeks. The necessity of the awards taking effect consecutively, rather than concurrently, in order to carry out the plain purpose of the statute, is apparent. We are referred to decisions of other states holding that awards may be made to run concurrently, but in each of such states the statute allowed it.

We are not to be understood as holding that if, at the expiration of the 205 weeks, disability of claimant shall exist by reason of the injuries resulting from this accident, other than the disability arising from the loss of the foot, the claimant will not be entitled to a further award on account thereof, but as simply holding that the claimant, by the first award having been allowed compensation to the full amount allowed for total disability, could not by the second award be awarded

further compensation for total disability on account of other injuries arising out of the same accident, which second award should run concurrently with the first award.

While the Commission has found that the injuries other than those resulting in the loss of the foot have disabled the claimant from working until January 28th, the date of the report, and has awarded compensation therefor to February 27, 1915, and has continued the case for further hearing, there is no finding that such disability is permanent, as would be the case in the event of the loss of a thumb or finger, or that the disability will exist at the expiration of the period of 205 weeks.

The award of compensation for the loss of the foot should be affirmed. The award of compensation for injuries other than the loss of the foot should be reversed, but without prejudice to the further continuance of the case, and to the right of the claimant to make further application to the Commission, or its successor, for an award of compensation on account of such other injuries, should he be so advised. All concur.